PUERTO RICO WATER RESOURCES AUTHORITY, Appellant, *v.* REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 1131. . Submitted November 29, 1943.—Decided January 12, 1944.

C. Domínguez Rubio for appellant. The registrar appeared by brief.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Joaquín Sanabria and his wife are the owners of a rural property which is encumbered by two mortgages including the corresponding incidental charges; the first in favor of the Federal Land Bank of Baltimore, for $1,300, and the second in favor of the United States of America, for $530. Upon this property the said spouses constituted a servitude in favor of the Puerto Rico Water Resources Authority, whereby the latter was granted the right (1) to maintain the wires of a transmission line across the property, thus creating a perpetual easement 600 feet in length, and (2) to pass underneath the transmission line over a parcel of land 600 feet long by 50 feet wide, the boundaries of which were stated.

In the deed creating the servitude, the Federal Land Bank of Baltimore, represented by Mastella Clark Reed, and the other creditor, the United States of America, represented by J. B. Klein, appeared releasing their respective mortgages on the said parcel.

The instrument was recorded as to the servitude and as to the release of the mortgage held by the United States, and the recording thereof was denied as to the mortgage held by the Federal Land Bank of Baltimore, because of the failure to state therein:

(a) That the Federal Land Bank of Baltimore is the present owner of the promissory note transferable by indorsement secured by said mortgage, payable to the order of said Bank, and

(b) That the notary who certified the deed had entered on the said promissory note the proper notation evidencing such release.

The use of figures in mentoining dates and amounts without their being spelled in full immediately thereafter, and the use of abbreviations and initials in the deed, were also entered as curable defects.

■ The Federal Land Bank of Baltimore can not effect a partial release of the property mortgaged without duly establishing its legal capacity therefor. It was not sufficient for that purpose that the promissory note transferable by indorsement had been issued payable to its order on the date the mortgage securing the same was executed. It was necessary that at the time of the release the Bank should be the holder of the note. This is so because, in accordance with §153 of the Mortgage Law, in the case of mortgages created to secure obligations transferable by indorsement or instruments payable to bearer, when the promissory note or instrument payable to bearer is indorsed or alienated, as the case may be, it is understood that the mortgage credit securing the same is transferred to the new holder of the instru-

ment, it being unnecessary to notify the debtor or to record the transfer in the registry of property. So, whoever disposes of the promissory note in any way, whether by cancelling the same wholly or partially or by in whole or in part releasing from the mortgage the property securing the note, must establish his capacity by presenting the instrument to the attesting notary, who in accordance with §82 of the Law, must mark the same canceled, if a total payment is involved, or enter a notation on the back of the instrument, if only a partial payment has been made, stating the amount paid on account. In the deed the notary must certify to the cancellation of the instrument or transcribe the notation, as the case may be.

If in the present case, which does not involve either a total or partial payment of the obligation, the Bank had exhibited the promissory note to the notary and the latter had certified that on the date of the execution of the deed the Bank was the holder of the promissory note transferable by indorsement, the capacity of the Bank would have been satisfactorily established. In lieu of such presentation, inasmuch as no total or partial payment was involved and hence §82 of the Mortgage Law was inapplicable, the promissory note could have been attached to the deed when the latter was presented in the registry, and in this way the Bank's capacity to release the parcel subject to the servitude might likewise have been established. If the party were not required to establish his capacity, it would be easy for an unscrupulous person having no interest in the promissory note transferable by indorsement or in the instrument payable to bearer, to appear before a notary and release totally or partially from the mortgage the property encumbered to secure said obligation.

The appellant claims to have established the legal capacity of the Federal Land Bank of Baltimore by citing some of the disputable or rebuttable presumptions set

forth in §102 of the Law of Evidence. That proposition is untenable. The safety and certainty which the registry of property must afford to those who examine its books in search of information regarding the title and condition or freedom from encumbrance of the properties therein recorded, require that the entries existing therein should not rest on mere rebuttable presumptions, which, as their name indicates and is provided by said §102 itself, constitute satisfactory evidence only if uncontradicted by other evidence. As we said in the case of *Land Authority* v. *Registrar*, 62 P.R.R. 483, 486:

". . . This duty is regulated by §18 of the Mortgage Law which expressly provides that 'registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, *upon the facts that appear from said instruments themselves.*' (Italics ours.) The registrar, in passing upon a document, does not decide questions of fact nor does he weigh the evidence. His mission consists in examining the authentic documents presented to him, whether principal or supplementary, in order to determine from their own terms or from the data or the antecedents appearing from the entries of the registry which relate to the document presented, whether the record or entry sought may be legally made."

■ The appellant suggests, without attempting to prove it, that the failure of the Bank to establish its capacity, which the registrar regards as an incurable defect, is at the most a curable defect.

The failure to establish the capacity is one of the defects which, according to the commentators on the Mortgage Law, may be curable or incurable, depending upon each case. If by reason of the title presented or of the records in the registry, the registrar has reasonable ground to believe that the capacity exists and that it is possible to establish it, the failure to do so must be regarded as a curable defect. . If on the contrary, the registrar has no reasonable ground for such belief, the failure to establish the capacity should be

regarded as an incurable defect and the record should be denied. The following example will better illustrate our contention: In a mortgage deed, the mortgagor appears through an attorney in fact. The latter does not exhibit to the notary the power of attorney he claims to hold, nor does he attach the same to the mortgage deed when he requests the recording thereof, nor is there in the registry any record regarding the property involved, from which it appears that the attorney in fact really holds said power of attorney. The registrar, therefore, has no reasonable ground to believe that the power of attorney actually exists and he must deny the record because of the incurable defect of the attorney in fact having failed to establish his authority. On the contrary, in a similar situation the attorney in fact exhibits the power of attorney to the notary. The latter sets forth this fact in the deed, but either does not express his opinion regarding the sufficiency of the attorney in fact's authority or confines himself to stating that, in his opinion, the attorney in fact has sufficient power to execute the mortgage deed; but he fails to transcribe literally the clauses which set forth the powers of the attorney in fact, so as to enable the registrar, who must pass upon the instrument, to determine for himself the sufficiency of the power of attorney; nor is a certified copy of the power of attorney attached to the deed. In these circumstances, inasmuch as it is known that the power of attorney exists, the registrar would have reasonable ground to believe that the capacity exists and that it is possible to establish it. See Galindo and Escosura, *Legislación Hipotecara,* volume 2, p. 573, and Morell, *Legislación Hipotecaria,* volume 3, p. 254.

Applying the above doctrine to the defect noted by the registrar, the fact that the obligation was issued payable to the order of the Federal Land Bank of Baltimore must have been set forth both in the note and in the mortgage deed at the time the promissory note transferable by indorsement

was drawn. This being so, when the mortgage was recorded, the name of the person to whose order the instrument transferable by indorsement was made payable, must have necessarily appeared in the record entry. Therefore, from the records in the registry, the registrar had reasonable ground to believe that the Federal Land Bank of Baltimore was the holder of the promissory note at the time the release was executed, and, as in the example already mentioned, the defect should be considered as curable.

We will now consider the alleged incurable defect regarding the failure of the notary to enter on the back of the note a notation evidencing the partial release in question. Section 82 of the Mortgage Law, which covers the matter, only requires such notation when a total or partial payment is involved. Said Section in its pertinent part reads as follows:

"Records made to secure sums represented by negotiable paper, to bearer or by endorsement, shall be canceled upon presentation of an instrument executed *by the persons who may have collected the credits, which instrument must set forth that the negotiable paper to bearer or by endorsement was canceled at the time of its execution. . .*"

The Spanish Mortgage Law of December 16, 1909, which introduced certain changes deemed necessary in connection with the cancellation of obligations transferable by indorsement and instruments payable to bearer, failed to provide for that additional requisite not contained in the previous law. If we take into account the true legislative purpose in regulating this class of transactions, we will realize that such a requisite is unnecessary. The legislative purpose was to facilitate and to expedite credit transactions, by permitting these promissory notes to circulate as freely and rapidly as currency, and to that end it was provided by §153 of the Mortgage Law that when one of these obligations was indorsed or alienated, the mortgage credit should be consid-

ered transferred together with the promissory note, it being unnecessary to notify the debtor or to record the transfer in the registry. But it was not the intention of the lawmaker that the promissory note should take the place of the registry of property, and the person who accepts an instrument of this kind must resort to the registry in order to verify any information regarding the mortgage credit securing the same.

Since the legal requisite referred to in the decision of the registrar does not exist, it is obvious that the noncompliance with such requisite by the notary does not constitute a defect.

■ Lastly, we will discuss the alleged curable defect of the use in the deed of figures in mentioning dates and amounts without their being spelled in full immediately thereafter, and of the use of abbreviations and initials in the designation of parties.

It is true that §17 of the Notarial Law forbids the use of figures in mentioning dates and amounts unless the same are spelled in full immediately thereafter. But since the noncompliance with said legal provision does not affect the validity of the title nor does it necessarily produce the nullity of the obligation, the alleged defect is neither curable nor incurable. It is one of those which Galindo and Escosura, and Morell, characterize as an omission that may give rise to an administrative correction, but which does not constitute a defect. Galindo and Escosura, *op. cit.*, vol. 2, p. 541; Morell, *op. cit.*, vol. 3, p. 226.

■ The same may be said regarding the abbreviation "Mr.," as well known in this island as that of "Sr." * The use of abbreviations should, of course, be avoided when it may lead to confusion; but as regards the one used in this case, there is no possibility of confusion and it may, therefore, be freely used.

---

*Abbreviation for the Spanish term *"Señor"*.

■ The defect noted by the registrar in connection with the use of initials refers to the fact that the notary wrote the name of the party who represented the United States of America as follows: "J. B. Klein." Subdivisions 5 and 6 of §9 of the Mortgage Law provide that every record shall set forth "the name and surname of the person . . . in whose favor the record," and "the name and surname of the person . . . from whom the property or rights to be recorded are immediately derived." But, as §21 of the Mortgage Law provides that public instruments embodying acts or contracts subject to record must state at least *all* the details which the record must contain under the penalty of nullity, relating to the persons of the parties thereto, the properties, and the recorded interests, and as in the present case not all of the requisites comprised in subdivisions 5 and 6 of §9 have been omitted, for it can not be said that the name of the party has been totally omitted, inasmuch as his initials and his surname are set forth, the defect, although present, must be regarded as curable. See Galindo and Escosura, op. cit., vol. 2, p. 579.

For the foregoing reasons, the decision appealed from must be reversed, except in so far as the defect of capacity is concerned, with respect to which the determination must be modified so as to consider the defect as curable, and the instrument should be recorded subject only to the defect indicated.

Mr. Justice Snyder did not participate herein.